CARPENTER, J.
Plaintiffs are asking that we enjoin the defendants from operating their plant located on a tract of land which fronts 200 *236 feet on the south side of Lincoln avenue, where the viaduct crosses the ravine occupied largely by the Cincinnati, Lebanon &' Northern and the Norfolk & Western railroads: The office of said plant is on a level with Lincoln avenue. The plant proper or manufacturing building is twelve to fifteen feet lower in the hollow. The eastern side of defendants’ lot lies alongside of the railroad property. ‘ Immediately to the north across said railway tracks and opposite defendant’s property, the Ford Motor Company has a four-story building which it uses in connection with its automobile business. There are other business buildings to the south along the railroads in the ravine between Lincoln avenue and Oak street, all of which tends to show that the territory in the block of land between Lincoln avenue and Oak street west and east, is gradually easting the mould of business on this territory.
It is admitted that the district lying immediately west is exclusively residential, of somewhat superior character. The evidence shows that during the business hours of the week days there are noises from the plants which render the plaintiffs’ homes at times more uncomfortable than before the plant began operations. The only discomfort arises from the noises.
It is claimed by the defendants that if there are any disturbing noises in said neighborhood, they arise from the operation of said railroads. They aver that their plant is used for the fabrication of structural and ornamental iron, and that the machinery used in said plant is the most modern and approved type, and any noise arising therefrom is not sufficient to disturb the peace and quiet of plaintiffs’ homes.
There is no claim, and can not be, that the operation of defendants’ plant is per se a nuisance. Further, it is admitted that the business is a lawful one. Even though in its operation it were unavoidably noxious and offensive, and thereby became prima facie a nuisance, yet it does not follow that plaintiffs are relieved from establishing that its operation is in fact a nuisance, and from which they suffer irreparable injury. In establishing such fact the surrounding facts and circumstances must be considered.
As is said in Wood, Nuisance, 638-9:
*237 “In determining the question of nuisance from noise or vibration, reference is always to be had to the locality, the nature of the trade of use of the property producing it, the time during which it exists, the intensity of the noise and the effects produced thereby.’ ’
In the case of Eller v. Koehler, 68 Ohio St. 51 [67 N. E. 89], Judge Davis, at page 56 in his opinion, says:
■ “Whether it be a case of injury to real property, or a case of personal annoyance or inconvenience, or of interference with the comfortable enjoyment of one’s property, or whether the question be as to the existence of a nuisance, or as to the extent of the alleged injury, or as to whether the defendant’s act caused the injury, and though the inquiry be before a chancellor or a jury, the contiguity of the alleged nuisance to the plaintiff’s property and the nature of the vicinage is always a pertinent circumstance to be considered. The matter of locality may be of much or little weight in arriving at a conclusion, nevertheless the parties have the right to have the controversy heard and'determined with all the light that locality may throt/upon it. The mutual interests of urban population require this. For example, if one unnecessarily erects, maintains and operates a noisy, smoky machine shop, or rolling mill, in the midst of a section of a city or town already wholly given up to residences, possibly many of them of elaborate design and great costs, there would be less excuse for the offender in so using his own property than if he had chosen a place which had been wholly or in part given up to trade and manufactures. All that can be required of men who engage in lawful business is that they shall regard the fitness of locality. In the residence sections of a city, business of no kind is desirable or welcome. On the other hand, one who becomes a resident of a trading or manufacturing neighborhood, or who remains while in the march of events a residence district gradually becomes a trading or manufacturing neighborhood, should be held bound to submit to the ordinary annoyances, discomforts and injuries which are fairly incident to the reasonable and general conduct of such business, in his chosen neighborhood. The true rule would be that any discomfort or injury *238 beyond this would be actionable; anything up to that point would not be actionable. ’ ’
In the case of Goodall v. Crofton, 33 Ohio St. 271 [31 Am. Rep. 535], the second clause of the syllabus reads as follows:
“When a party, who complains that a business, lawful per se, is a nuisance, and affects his property injuriously by reason of the manner in which it is conducted, has an adequate remedy in an action for damages, he must establish his right to relief at law, before equity will interfere by injunction.”
Judge Ashburn, in the opinion of the court, at page 277,. says:
“A court of chancery may interfere by injunction when the injury is conceded or is clearly established, yet the power should always be exercised cautiously and be sparingly used. Where the business complained of is lawful, and conducted in the most approved and orderly manner, in a place where there are in operation numerous establishments of kindred description, contributing to the needs of the community, and where the destruction of a business ivould occasion mpre injury to the defendant than advantage to the plaintiff, the chancellor will exercise the high prerogative of injunction with great care and caution.”
Considering now the application of the foregoing propositions of law in connection with the general law on this subject, we have a lawful business in itself and one that is useful and necessary to the community, and which the public good requires shall be carried on by some persons in some locality. The real question is whelhér it is proper and right that it be carried on in the locality where it is now established.
It will be remembered that a ravine exists at the eastern border of this territory lying fifteen to twenty feet'from the level of Lincoln avenue and May street, where plaintiffs, respectively, reside. That the defendants’ plant was located in this ravine twelve to fifteen feet lower than Lincoln avenue; that other business buildings are located along said ravine in the immediate neighborhood; that two railroads are operating their trains da.y and night on said tracks; that said railroads were there and were operating long before plaintiffs located their homes on Lincoln avenue and May street.
*239 Is it not reasonable to presume that plaintiffs, in possession of all these facts, could have foreseen, that in the large and growing city of Cincinnati, the march of business would sooner or later follow the line of these railroads and convert the adjacent strips of land into business uses? As said by Judge Davis in the case of Eller v. Koehler, supra.
“All that can be required of men who engage in lawful business is that they shall regard the fitness of locality. In the residence sections of a city, business of no bind is desirable or welcome. On the other hand, one who becomes a resident of a trading or manufacturing neighborhood,' or who remains while in the march of events a residence district gradually becomes a trading or manufacturing neighborhood,- should be held bound to submit to the ordinary annoyances, discomforts and injuries which are fairly incidental to the reasonable and general conduct of such business in his chosen neighborhood. The true rule would be that any discomfort or injury beyond this would be actionable; anything up to that point would not be actionable.”
The doctrine underlying this class of eases'is grounded upon the gospel rule of doing unto others as we would that they may do unto us. “Sic utere tuo ut alienum non laedas” is borrowed from the Gospel and may be freely translated: So reasonably to use thine own as not to injure another in the reasonable use of his.
As before stated, the land upon which- the establishment, complained of was located was peculiarly adapted to business and manufacturing. Its location by reason of railroad facilities invited such use; and notwithstanding it may have discommoded plaintiffs and rendered their homes somewhat uncomfortable, yet we can not say that defendant’s use of its property was unreasonable in its relation to plaintiffs’ reasonable use of theirs.
“The law will not declare a thing a nuisance because it is unpleasant to the eye, nor because the property of another is rendered less valuable, nor because its existence is a constant source of irritation and annoyance to others. It does not pander to man’s taste, nor consult their mere convenience. It simply guards and upholds their material rights and shields them from unwarrantable invasion.”'
*240 While th'e homes of these plaintiffs in connection with a large number of others, constituted in themselves a residential section or neighborhood, it does not follow that they are free to command the use, so long as that use is reasonable, to which an adjacent district may be utilized. Such appears to us to- be the situation here. Consequently plaintiffs, obedient to the law, must submit to such annoyances and discomforts as are fairly incidental to the use of this adjacent district lying along said railroads.
We therefore hold that plaintiffs have failed to bring theii case within the rules of law entitling them to an injunction.
The injunction heretofore granted is dissolved and the petition is dismissed, for which an entry may be drawn accordingly.
Meals and Grant, JJ., concur.